**IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF TEXAS SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ANDREW TONY DO, | § | Case No. 26-40839 |
| | § | |
| DEBTOR. | § | |
| | § | |
| DAVID TOMLIN, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| vs. | § | |
| | § | |
| ANDREW TONY DO | § | |
| | § | |
| DEFENDANT. | § | Adv. Proc. |
| | § | |
| | § | |
| | § | |

**PLAINTIFF'S COMPLAINT TO DETERMINE THE DISCHARGE ABILITY OF A DEBT UNDER 11 U.S.C. § 523**

COMES NOW Plaintiff, David Tomlin ("Plaintiff"), creditor and party-in-interest in the above-captioned Chapter 7 bankruptcy case of debtor Andrew Tony Do (the "Debtor"), and files this *Complaint to Determine the Dischargeability of a Debt pursuant to 11 U.S.C. § 523* (the "Complaint") in this adversary proceeding (the "Adversary Proceeding"). In support thereof, Plaintiff respectfully shows the Court as follows:

## Table of Contents

IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF TEXAS SHERMAN DIVISION ........ 1

Index ........ 4

Jurisdiction and Venue ........ 6

Parties ........ 6

Summary Of Arguments ........ 7

Overview: Why the Parties Are Before This Court ........ 9

A. Statutory Basis – Embezzlement Exceptions ........ 13

B. Defendant's Scheme to Misappropriate and Embezzle Plaintiff's Investment Funds and Property ........ 15

Non-discharge ability under §523(a)(4) ........ 19

A. Statutory Basis – Larceny Exceptions ........ 19

Non-discharge ability under § 523(a)(2)(A) ........ 22

i. Fraudulent Investment and Ownership Representations: ........ 24

ii. Concealment and Misuse of Plaintiff's Funds: ........ 25

iii. Plaintiff's Reliance and Resulting Injury ........ 26

iv. Nondischargeability Under § 523(a)(2)(A) ........ 27

# INDEX

**Cases**

*Allison v. Roberts (Matter of Allison)*, 960 F.2d 481, 483 (5th Cir. 1992)) .......... 18
*Friendly Fin. Service - Eastgate v. Dorsey* (*In re Dorsey*), 505 F.3d 395, 399 (5th Cir. 2007) .......... 19
*In re Carlton*, 26 B.R. 202, 205 (Bankr. M.D. Tenn. 1982) .......... 16
*In re Miller*, 39 F.3d 301, 305 (11th Cir. 1994) .......... 19
*Moore v. United States*, 160 U.S. 268, 269, 16 S. Ct. 294, 40 L. Ed. 422 (1895) .......... 17
*RAI Credit Corp. v. Patton (In re Patton)*, 129 B.R. 113, 116 (Bankr. W.D. Tex. 1991) .......... 11
*Recoveredge, L.P. v. Pentecost*, 44 F.3d 1284 at 1293 (5th Cir. 1995) .......... 19
*Smith v. Hayden (In re Hayden)*, 248 B.R. 519, 526 (Bankr. N.D. Tex. 2000) .......... 10,11,17
*In re Weber*, *892 F.2d 534 (7th Cir. 1989)*) .......... 11
*Wright v. Minardi (In re Minardi)*, 536 B.R. 171, 187 (Bankr. E.D. Tex. 2015) .......... 18
*Wright v. Minardi (In re Minardi)*, 536 B.R. 171, 190 (Bankr. E.D. Tex. 2015) .......... 16

**Statutes**

11 U.S.C. § 523 .......... 8, passim
11 U.S.C. § 523(a)(2)(A) .......... passim
11 U.S.C. § 523(a)(4) .......... passim
11 U.S.C. § 523(a)(6) .......... 8
11 U.S.C. § 727(b) .......... 8
28 U.S.C. § 1334 .......... 6
28 U.S.C. § 1409 .......... 6
28 U.S.C. §§ 1408 .......... 6
28 U.S.C. §§ 157 .......... 6
Tex. Penal Code § 31.02 .......... 16

**Other Authorities**

LARCENY, Black's Law Dictionary (12th ed. 2024) .......... 10

**Rules**

Fed. R. Bankr. P. 7004(b)(9) .......... 6

Fed. R. Bankr. P. 7008 .......... 6

**Treatises**

4 Collier on Bankruptcy ¶ 523.10 (16th 2026) .......... 11

3 Collier on Bankruptcy ¶ 523.08[5], at 523–57 to 523–58 .......... 11

## Jurisdiction and Venue

1. This Court has jurisdiction over the Bankruptcy Case and the Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334. The Adversary Proceeding constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue of the Bankruptcy Case and the Adversary Proceeding is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. Plaintiffs consent to the Court's entry of final orders or judgment in the Adversary Proceeding. *See* Fed. R. Bankr. P. 7008.

4. Pursuant to Bankruptcy Rule 4007(c), the deadline to file a complaint to determine the dischargeability of the Debtor's debts is June 9, 2026. This Complaint is, therefore, timely filed under Bankruptcy Rule 4007(c).

## Parties

5. Plaintiff David Tomlin is a creditor of Defendant and party-in-interest in the Bankruptcy Case and can be served through its undersigned counsel of record.

6. Defendant Andrew Tony Do ("Defendant") is an individual residing at 130 Sweetgum Dr., Murphy, TX, 75094, and is the Chapter 7 Debtor in this case. Defendant may be served with process in this Adversary Proceeding at that address and to his attorney of record, Omar Colon, P.O. Box 2836, Frisco, Texas 75034 at such other place as he may be found. *See* Fed. R. Bankr. P. 7004(b)(9).

## SUMMARY OF ARGUMENTS

7. This case arises from Defendant Andrew T. Do's calculated scheme to unlawfully obtain and retain Plaintiff David Tomlin's funds and property under the guise of a business investment. Defendant Do, acting individually and in concert with others, engaged in a pattern of fraudulent inducement, misappropriation of funds, and deceptive conduct designed to permanently deprive Plaintiff of his money and to extract financial benefits for Defendant's own use.

8. The resulting debt is not dischargeable in bankruptcy. Under 11 U.S.C. § 523(a)(2)(A), debts obtained through false pretenses, false representations, or actual fraud are excepted from discharge. Defendant Do's representations—both express and implied—that Plaintiff would receive an ownership interest, that his funds would be used for legitimate business purposes, and that he would be reimbursed for expenses, induced Plaintiff to transfer substantial funds and incur additional financial obligations, which Defendant then misappropriated

9. Likewise, 11 U.S.C. § 523(a)(4) bars discharge of debts arising from embezzlement or larceny. Defendant Do's conduct satisfies these standards. Plaintiff entrusted substantial funds to Defendant for specific investment and business purposes, including the acquisition and operation of business assets and real estate opportunities. Rather than using those funds for the purposes represented to Plaintiff, Defendant knowingly received, exercised control over, and benefited from Plaintiff's funds, which were diverted and appropriated for unauthorized purposes. Such conduct constitutes embezzlement under § 523(a)(4).

10. Additionally, to the extent Defendant obtained Plaintiff's funds or property interests through false representations, deception, or without Plaintiff's effective consent and lawful authorization, Defendant's conduct constitutes larceny within the meaning of § 523(a)(4). As a result, any debt arising from Defendant's receipt, appropriation, conversion, or misuse of Plaintiff's funds is nondischargeable.

11. Defendant’s actions were deliberate, intentional, and part of a continuing scheme to obtain and retain Plaintiff’s money through false representations and deceptive conduct. Defendant knowingly made, adopted, and/or contributed to representations designed to induce Plaintiff to provide substantial financial contributions, continued to solicit and accept funds and payments despite having no intention of honoring the promises made to Plaintiff, and thereafter retained Plaintiff’s money while failing and refusing to provide the promised ownership interest, reimbursement, accounting, or return of funds. Defendant’s conduct was willful and malicious, undertaken with the intent to cause injury to Plaintiff or with substantial certainty that such injury would occur. As a result, the debt is also nondischargeable under 11 U.S.C. § 523(a)(6).

12. Defendant’s bankruptcy filing does not discharge the debts owed to Plaintiff. Pursuant to 11 U.S.C. § 727(b), a Chapter 7 discharge does not discharge debts excepted under 11 U.S.C. § 523. Plaintiff asserts that the debts arising from Defendant’s conduct are excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6), because such debts were obtained through false pretenses, false representations, actual fraud, embezzlement, larceny, and/or willful and malicious injury to Plaintiff and Plaintiff’s property.

Accordingly, Defendant cannot use Chapter 7 bankruptcy to avoid liability for the wrongful conduct alleged herein, and the debt owed to Plaintiff should be declared nondischargeable.

## OVERVIEW: WHY THE PARTIES ARE BEFORE THIS COURT

13. In or about January 2024, Plaintiff was introduced to the business operations of Defendant Andrew T. Do when Plaintiff attended a service appointment at Endless Signs and Wraps, a signage, vehicle-wrap, and automotive-services business that Do owned.

14. Over the following months, Do cultivated Plaintiff's trust and confidence and, by in or about May 2024, solicited Plaintiff to invest in what he represented to be a legitimate and expanding business enterprise.

15. Among other things, Do described a real-estate venture to develop residential housing for adults with autism—a cause of particular personal significance to Plaintiff—to be pursued in conjunction with Gray Dog Investments, LLC ("Gray Dog") and Endless Signs and Wraps (collectively the "Companies").

16. Holding himself out as a principal, and decision-maker of the businesses, Do represented to Plaintiff that, in exchange for his financial contributions, Plaintiff would (i) receive an equity ownership interest in the Companies and its real-estate holdings; (ii) have his funds applied solely to legitimate Companies purposes, including property acquisition, business expansion, and operations; and (iii) be reimbursed for the expenses and advances Plaintiff made.

17. In reasonable reliance on these representations, between approximately May 2024 and January 2025 Plaintiff transferred no less than $138,000 to Do and the Companies. One of which was a $100,000 transfer to Do personally on August 5, 2024.

18. Plaintiff also began working in the Companies day-to-day operations. Representing that the Companies had no corporate credit card, Do and or his employee Lisa Nguyen ("Nguyen") directed Plaintiff to use his personal funds and credit to pay substantial Companies expenses—including supplies, vendor invoices, equipment, repairs, and travel—on repeated assurances that Plaintiff would be promptly reimbursed. The vendors Plaintiff paid on the Companies' behalf included Ceramic Pro, Fellers, and Tinybot, among others.

19. The advances Do induced Plaintiff to make were significant and identifiable. In or about September 2024, at Defendant's request, Plaintiff used his personal credit to purchase a commercial printer for approximately $12,500, on Defendant's promise that Plaintiff would be repaid $15,000 to compensate him for the purchase and for the use of his credit. Plaintiff also purchased a Graphtec 160 wide-format plotter for $7,096.99 for the Company's use.

20. In or about November 2024, Plaintiff organized and personally funded the logistics for Defendant's staff to participate in the SEMA trade show in Las Vegas, Nevada, renting a Dodge Ram 2500 through Turo, using his own airline-rewards miles to cover air travel, and arranging and paying for lodging. Upon the parties' return, Plaintiff also paid to repair the Company's primary printer. Plaintiff continued to fund Company equipment, training-related travel, and operating expenses through approximately January 2025.

21. Although Do initially reimbursed certain of Plaintiff's advances in cash, they ceased all reimbursement in or about October 2024. The sole exception was a single $2,000

cash payment in or about February 2025, which Defendant immediately directed Plaintiff to apply to the Companie's payroll.

22. As Plaintiff's advances went unreimbursed and his financial circumstances deteriorated, Plaintiff began, in or about March 2025, issuing formal written invoices and demands for repayment, ultimately delivering more than ten such invoices. Defendant failed and refused to repay Plaintiff, to return his funds, or to provide any accounting for the use or disposition of his money and property.

23. When Plaintiff pressed for an explanation, Defendant's account of where his investment had gone shifted and unraveled.

24. On or about March 31, 2025, Plaintiff assisted in moving Nguyen's belongings after she was evicted from the very property Defendant had represented would be purchased with Plaintiff's investment.

25. Questioned about the missing funds, Nguyen claimed they had instead been used to "buy out" Do—a justification never previously disclosed to Plaintiff and irreconcilable with the ownership interest and fund use Defendant had promised.

26. Shortly thereafter, Nguyen solicited Plaintiff to pay $6,400 toward her personal rent, representing that her father would reimburse Plaintiff $7,000 for his trouble. Plaintiff paid, but was never repaid.

27. Plaintiff fully disengaged from Defendant, Nguyen and his ventures in or about April 2025 and retained legal counsel.

28. Even then, Defendant's misuse of Plaintiff's property continued: on or about May 12, 2025, Plaintiff discovered an unauthorized charge of $2,311.06 on his American

Express account for an Airbnb reservation he had not approved. Nguyen admitted making the charge without Plaintiff's consent and, when Plaintiff asked to meet, sent him a false address.

29. To date, Defendant has not returned any portion of Plaintiff's funds, reimbursed any of his advances, conveyed any ownership interest, or provided any accounting for the money, credit, and property they obtained from him.

30. Plaintiff first sought relief in state court, filing suit against Do, Nguyen, and Gray Dog in the 44th Judicial District Court of Dallas County, Texas (Cause No. DC-25-08184). Said case was set for trial on March 16, 2026—when Do filed the above-captioned bankruptcy case, staying the state-court action as to Do and bringing the parties before this Court.

31. In the state-court litigation, Do's sworn discovery responses further evidenced the fraudulent character of the scheme. Do denied that Plaintiff had been promised any ownership interest in the Company, denied that the Company received approximately $138,000 from Plaintiff after May 1, 2024, and denied preparing any agreement for Plaintiff to invest in or work for the Company—all despite Plaintiff's documented transfers and Do's own solicitation of Plaintiff's money, credit, and labor.

32. Do further represented that responsive communications, financial records, and reimbursement documents concerning Plaintiff's investment and expenditures were no longer within his possession, custody, or control yet failed to explain why and how said documents were discarded.

33. As a direct and proximate result of Do's conduct, Plaintiff has suffered substantial financial loss, including the loss of his $138,000 investment, unreimbursed

advances and operating expenses, depletion of his personal credit, unauthorized charges to his financial accounts, and the loss of the compensation and ownership interest he was promised.

34. The debt Do owes Plaintiff arises from false pretenses, false representations, and actual fraud, and from the embezzlement and larceny of property entrusted to or obtained from Plaintiff, and is therefore excepted from discharge under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4), as set forth in the Counts that follow.

**Andrew Do's Fraudulent Conduct**

35. Do knowingly made the foregoing representations to induce Plaintiff to part with his money, credit, labor, and property. At the time Do made them, he had no intention of performing—of conveying the promised ownership interest, applying Plaintiff's funds as represented, or reimbursing Plaintiff's advances—or, at a minimum, Do made the representations with reckless disregard for their truth.

36. Plaintiff reasonably and justifiably relied on Do's representations in transferring funds, extending his personal credit, and devoting his labor to the Company. Do's conduct was intentional, knowing, and willful, undertaken for the purpose of obtaining Plaintiff's money and property under false pretenses and permanently depriving Plaintiff of them.

**Non-discharge ability under §523(a)(4)**

## A. Statutory Basis – Embezzlement Exceptions

37. (a) A discharge under . . . this title does not discharge an individual debtor from any debt—

38. (4) Section 523(a)(4) of the Bankruptcy Code provides that a discharge under Chapter 7"does not discharge an individual debtor from any debt … for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).

39. This provision targets debts resulting from a debtor's abuse of trust or from the debtor's taking of property by unlawful means. As the Fifth Circuit has explained, § 523(a)(4) was intended to reach both "debts incurred through abuses of fiduciary positions" and debts from a debtor's "active misconduct whereby [the] debtor has deprived others of their property by criminal acts". The latter category includes debts arising from larceny and embezzlement, which are distinct grounds for nondischargeability under § 523(a)(4).

40. Embezzlement, involves the fraudulent appropriation of property by a person to whom the property was entrusted or into whose possession the property lawfully came. Courts have consistently recognized that embezzlement occurs when a debtor initially obtains lawful possession of property but later appropriates it for unauthorized purposes with fraudulent intent. *See In re Weber*, 892 F.2d 534 (7th Cir. 1989).

41. Larceny, by contrast defined under federal common law as the "fraudulent and wrongful taking and carrying away of the property of another with the intent to convert it to the taker's use and with intent to permanently deprive the owner of such property." *Smith v. Hayden* (In re Hayden), 248 B.R. 519, 526 (Bankr. N.D. Tex. 2000) (quoting *In re Patton*, 129 B.R. 113, 116 (Bankr. W.D. Tex. 1991)). Unlike embezzlement, larceny requires that the debtor's initial acquisition of the property be unlawful. Federal common law governs the meaning of larceny under § 523(a)(4).

42. The legislative history of 11 U.S.C. § 523(a)(4) reflects Congress's intent to except from discharge debts arising from wrongful conversions, embezzlement, and larceny involving the fraudulent appropriation or misuse of another's property. Courts interpreting § 523(a)(4) recognize that embezzlement occurs where property is lawfully obtained but subsequently appropriated for an unauthorized use with fraudulent intent. H.R. Rep. No. 95-595, at 364 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6320.

### A. Defendant's Scheme to Misappropriate and Embezzle Plaintiff's Investment Funds and Property

43. Here, Defendant Andrew T. Do carried out a scheme to obtain and misuse Plaintiff David Tomlin's money, credit, labor, and property beginning in or around May 2024. Defendant cultivated Plaintiff's trust by presenting Gray Dog Investments, LLC and Endless Signs and Repairs as a legitimate business ventures and representing that Plaintiff would become an equity owner in the Companies and participate in future business opportunities.

44. Defendant, acting in concert with others associated with Gray Dog Investments, LLC and Endless Signs and Repairs, presented himself as being involved in the business operations, investment opportunities, and financial decisions related to those entities. Through these representations and joint business dealings, Defendant induced Plaintiff to transfer substantial sums of money and to personally fund business operations with the understanding that Plaintiff would be reimbursed and receive an ownership interest in the Companies.

45. Relying on Defendant's representations and instructions, Plaintiff transferred approximately $138,000.00 to Defendant and affiliated entities for purported business

expansion, operational expenses, equipment purchases, and investment opportunities. Defendant represented that the funds would be used for legitimate Company-related purposes and for the mutual benefit of the parties.

46. Beginning in approximately July 2024, Plaintiff was directed to personally fund substantial operational expenses for Gray Dog Investments, LLC and Endless Signs and Repairs, including vendor invoices, equipment purchases, travel expenses, repairs, supplies, and other operational costs. Defendant participated in and benefited from these arrangements and representations that reimbursement would be made and that Plaintiff's financial contributions were necessary for continued business operations and expansion.

47. In or around September 2024, Defendant persuaded Plaintiff to purchase a commercial printer for the benefit of the Company using Plaintiff's personal credit. Defendant represented that Plaintiff would be repaid for the purchase and compensated for the use of Plaintiff's credit. Defendant thereafter continued directing Plaintiff to incur additional Company-related expenses and obligations.

48. Plaintiff additionally funded travel arrangements, operational expenses, repairs to Company equipment, and other business-related expenditures at Defendant's request and for the continued operation of Gray Dog Investments, LLC and Endless Signs and Repair.

49. Although Defendant initially obtained Plaintiff's money and property through representations of reimbursement, business ownership, and legitimate Company use, Defendant thereafter fraudulently appropriated Plaintiff's funds and property for unauthorized purposes while continuing to benefit from Plaintiff's labor, credit, and financial

contributions. By October 2024, Defendant ceased any form of reimbursement to Plaintiff, despite continuing to retain and use the benefits of Plaintiff's contributions.

50. By approximately March 2025, Plaintiff began issuing formal invoices and demands for repayment after Defendant repeatedly failed to honor reimbursement obligations or provide any legitimate accounting for Plaintiff's investment funds and expenditures. Defendant failed and refused to reimburse Plaintiff, return Plaintiff's funds, or provide documentation showing the actual disposition of Plaintiff's money and property.

51. Defendant thereafter denied material portions of the parties' agreement, denied promising Plaintiff an ownership interest in Gray Dog Investments, LLC, and denied Plaintiff's understanding regarding the intended use of the transferred funds despite previously directing and accepting Plaintiff's substantial financial contributions.

52. Defendant additionally represented during discovery that responsive communications, reimbursement records, financial documents, and Company-related materials concerning Plaintiff's investment and expenditures were no longer within Defendant's possession, custody, or control.

53. Defendant orchestrated the acquisition and use of Plaintiff's money, credit, and property by directing Plaintiff to entrust substantial assets to Defendant, Gray Dog Investments, LLC and Endless Signs and Repairs for purported business purposes. After obtaining possession and control of those assets, Defendant fraudulently appropriated them for unauthorized purposes, retained the benefits thereof, and failed to reimburse or account for the funds despite repeated demands.

54. Defendant's conduct satisfies the established elements of embezzlement under 11 U.S.C. § 523(a)(4): (1) property rightfully came into Defendant's possession; (2) Defendant appropriated the property for uses other than those for which it was entrusted; and (3) the surrounding circumstances demonstrate fraudulent intent. Defendant intentionally orchestrated Plaintiff's continued financial contributions while concealing the true disposition of the funds and failing to provide the promised ownership interests, reimbursement, or repayment.

55. Congress specifically excepted debts arising from embezzlement from discharge under § 523(a)(4). Defendant's fraudulent appropriation and misuse of Plaintiff's entrusted funds, credit, and property constitute precisely the type of dishonest conduct for which bankruptcy relief is unavailable.

56. Defendant's conduct constitutes embezzlement within the meaning of 11 U.S.C. § 523(a)(4). Plaintiff entrusted substantial funds and property to Defendant for specific business purposes, including investments in Gray Dog Investments, LLC and Endless Signs and Repairs, reimbursement of Company expenses, equipment purchases, payroll support, vendor payments, and operational costs. Defendant accepted and exercised control over those funds and assets based upon representations that they would be used for legitimate Company purposes and that Plaintiff would either be reimbursed or receive an ownership interest in return.

57. Instead of using the funds as represented, Defendant diverted and retained Plaintiff's money and property for unauthorized purposes, including personal and non-disclosed expenditures, while continuing to solicit additional contributions from Plaintiff.

Defendant acted in concert with others associated with Gray Dog Investments, LLC and Endless Signs and Repair to obtain and retain Plaintiff's funds through false assurances, concealment, and misuse of entrusted property. Defendant further failed to provide any meaningful accounting despite repeated demands and denied possessing or controlling documents relating to Plaintiff's investments and reimbursements.

58. These actions were not mere breaches of contract or failed business dealings. Defendant lawfully obtained access to Plaintiff's funds and property through a relationship of trust and confidence, then fraudulently appropriated those assets for uses other than the purposes for which they were entrusted. Such conduct constitutes embezzlement under federal common law because Defendant appropriated property entrusted to him with fraudulent intent and without Plaintiff's authorization.

59. Congress expressly barred debts arising from embezzlement from discharge under 11 U.S.C. § 523(a)(4). Defendant's misuse and conversion of Plaintiff's entrusted funds and property fall squarely within the type of misconduct prohibited by the statute. Accordingly, the debt arising from Defendant's embezzlement and fraudulent appropriation of Plaintiff's property is nondischargeable and survives bankruptcy.

## NON-DISCHARGE ABILITY UNDER §523(A)(4)

### A. Statutory Basis – Larceny Exceptions

> (a) A discharge under . . . this title does not discharge an individual debtor from any debt—
>
> . . .
>
> (4) . . . larceny[.]

- 11 U.S.C.S. § 523(a)(4).

60. Courts within the Eastern District of Texas have recognized that embezzlement and larceny under 11 U.S.C. § 523(a)(4) primarily differ based on the timing and nature of the debtor's possession of the property. Embezzlement applies where the debtor initially possesses the property lawfully but later fraudulently appropriates it, whereas larceny applies where the debtor unlawfully appropriates the property from the outset. *Wright v. Minardi (In re Minardi)*, 536 B.R. 171, 190 (Bankr. E.D. Tex. 2015). Meaning in essence that "[o]ther than the manner in which the funds come into possession of a party, larceny does not differ from embezzlement." *Smith v. Hayden (In re Hayden)*, 248 B.R. 519, 526 (Bankr. N.D. Tex. 2000). So, while larceny involves "[t]he unlawful taking . . ." *embezzlement*, by contrast, involves "the fraudulent appropriation of property by one who initially acquired it lawfully or by consent." *In re Carlton*, 26 B.R. 202, 205 (Bankr. M.D. Tenn. 1982) citing *Moore v. United States*, 160 U.S. 268, 269, 16 S. Ct. 294, 40 L. Ed. 422 (1895). Indeed, Texas law expressly consolidates embezzlement into the general criminal offense of theft as defined in Section 31.03 of the Texas Penal Code. *See* Tex. Penal Code § 31.02; see also *In re In the Est. of Booth*, No. 02-24-00056-CV, 2025 Tex. App. LEXIS 2666, at *22 (Tex. App.—Fort Worth Apr. 17, 2025, no pet. h.) ("A person commits theft if he unlawfully appropriates property with the intent to deprive the owner of the property. *See* Tex. Penal Code Ann. § 31.03(a). Appropriation of property by another is unlawful if it is without the owner's effective consent, and consent is not effective if induced by deception or coercion. *See Id.*§ 31.03(b)(1); 31.01(3)(A)").

61. Congress expressly excepted debts arising from larceny from discharge under 11 U.S.C. § 523(a)(4). Federal common law defines larceny as the unlawful taking and carrying away of another's property with the intent to permanently deprive the owner of it. Unlike

embezzlement, which involves the fraudulent appropriation of property initially obtained lawfully, larceny applies where the original taking itself was wrongful and without consent.

62. In the present case, Defendant's conduct constitutes larceny or, at minimum, embezzlement, because Defendant wrongfully appropriated Plaintiff's funds, credit, and property from the outset through false pretenses, unauthorized transactions, and intentional misrepresentations regarding Gray Dog Investments, LLC, Endless Signs and Repairs and related business ventures. Plaintiff transferred substantial funds and incurred significant financial obligations based upon Defendant's representations that the monies would be used for legitimate investments, Company operations, reimbursement obligations, and business opportunities.

63. Defendant had no lawful right to permanently retain or divert Plaintiff's property for personal benefit or undisclosed purposes. Instead, Defendant intentionally exercised dominion and control over Plaintiff's funds and assets inconsistent with Plaintiff's ownership rights, including retaining investment funds, failing to reimburse operational expenditures, utilizing Plaintiff's credit accounts for unauthorized purposes, and continuing to solicit additional financial contributions despite knowing repayment would not occur.

64. This was not a mere failed business venture or contractual dispute. Defendant's conduct demonstrates a calculated scheme to unlawfully obtain Plaintiff's property through deception and thereafter permanently deprive Plaintiff of those funds and assets. Defendant's actions, including the unauthorized retention and diversion of Plaintiff's money and credit, constitute the precise type of wrongful taking contemplated by § 523(a)(4).

Defendant's continued refusal to return Plaintiff's property, provide any meaningful accounting, or acknowledge the financial obligations owed further evidences the intent to permanently deprive Plaintiff of his property. Accordingly, the debt arising from Defendant's larcenous conduct is nondischargeable under 11 U.S.C. § 523(a)(4).

65. Accordingly, Defendant's debt to Plaintiff, arising from the theft and embezzlement, is nondischargeable under 11 U.S.C. § 523(a)(4).

## NON-DISCHARGE ABILITY UNDER § 523(a)(2)(A)

66. Plaintiff David Tomlin repeats and re-alleges all preceding paragraphs as if fully set forth herein. This Count seeks a determination that the debt owed by Defendant to Plaintiff is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

> (a) A discharge under . . . this title does not discharge an individual debtor from any debt —
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

67. In the Fifth Circuit, a debt is non-dischargeable under § 523(a)(2)(A) if it stems from the debtor's knowing false pretenses, false representations, or actual fraud carried out with intent to deceive, which the creditor justifiably relied upon to its detriment. *Wright v. Minardi (In re Minardi)*, 536 B.R. 171, 187 (Bankr. E.D. Tex. 2015) (citing *Allison v. Roberts (Matter of Allison)*, 960 F.2d 481, 483 (5th Cir. 1992)). For a debt to be dischargeable under the actual fraud provision of section 523(a)(2)(A), the debtor's conduct must consist of some "deceit,

artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another— something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." *Recoveredge, L.P. v. Pentecost*, 44 F.3d 1284 at 1293 (5th Cir. 1995) quoting 3 *Collier on Bankruptcy* ¶ 523.08[5], at 523–57 to 523–58. Actual fraud in this context encompasses any deceitful scheme intended to cheat another–it is not limited to express misrepresentations. *See Friendly Fin. Service-Eastgate v. Dorsey* (*In re Dorsey*), 505 F.3d 395, 399 (5th Cir. 2007).

68. As set forth herein, Defendant engaged in a deliberate and continuing scheme of false pretenses, false representations, and actual fraud to obtain Plaintiff's money, credit, property, and financial support. Defendant solicited substantial funds and operational support from Plaintiff through knowingly false assurances that Plaintiff would receive an ownership interest in Gray Dog Investments, LLC, reimbursement for expenses, participation in profitable business ventures, and repayment for funds advanced for Company operations and investments.

69. Defendant knowingly misrepresented the purpose and intended use of Plaintiff's funds and induced Plaintiff to transfer substantial monies, incur personal debt, and finance Company operations for Defendant's benefit. Defendant further concealed material facts regarding the true financial condition of the business, the intended use of Plaintiff's investments, and Defendant's lack of intent to repay Plaintiff or provide the promised ownership interest. Defendant's conduct included directing Plaintiff to personally fund vendor invoices, equipment purchases, payroll obligations, travel expenses, repairs, and operational costs under repeated promises of reimbursement that Defendant never intended to honor.

70. Plaintiff justifiably relied upon Defendant's representations and omissions in transferring funds, extending credit, and continuing to provide financial support to Defendant and Gray Dog Investments, LLC and Endless Signs and Repair. As a direct and proximate result of Defendant's fraudulent conduct, Plaintiff suffered substantial damages, including loss of investment funds, unreimbursed operational expenses, unauthorized charges, credit obligations, and consequential financial harm. Accordingly, the debt arising from Defendant's false pretenses, false representations, and actual fraud is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Defendant's fraudulent acts included, but are not limited to, the following:

### *i. Fraudulent Investment and Ownership Representations:*

71. Beginning in or around May 2024, Defendant solicited Plaintiff David Tomlin to invest substantial sums of money into Gray Dog Investments, LLC and related ventures by representing that Plaintiff would receive an ownership interest in the Company and participate in profitable business and real estate opportunities. Defendant represented that Plaintiff's funds would be used for legitimate Company expansion, acquisition of property, operational growth, and related investment opportunities associated with Gray Dog Investments, LLC and Endless Signs and Repair.

72. In reliance upon these representations, Plaintiff transferred approximately $138,000 to Defendant and affiliated entities and further agreed to personally finance substantial operational and business expenses on behalf of the Company. Defendant's representations regarding ownership, reimbursement, and the intended use of Plaintiff's funds

were materially false when made and were known by Defendant to be false. Defendant never intended to provide Plaintiff with the promised ownership interest or fully reimburse Plaintiff for the expenditures incurred on behalf of Defendants and the Company.

73. Defendant's discovery responses further evidence the fraudulent nature of the scheme. In response to Requests for Admission, Defendant denied that Plaintiff was promised any ownership interest in the Company and denied that the Company received approximately $138,000 from Plaintiff after May 1, 2024, despite Plaintiff's documented transfers and expenditures on behalf of Defendants and the Company. Defendant likewise denied preparing any agreement for Plaintiff to become an investor or work for the Company, despite repeatedly soliciting Plaintiff's involvement in Company operations and business activities.

74. Defendant further induced Plaintiff to purchase equipment, incur debt on personal credit accounts, and personally fund Company operations through repeated assurances that Plaintiff would be repaid and financially protected. These representations included promises that Plaintiff would be reimbursed for vendor payments, equipment purchases, payroll support, travel expenses, repairs, supplies, and operational costs incurred for the benefit of Gray Dog Investments, LLC and related business operations.

### *ii. Concealment and Misuse of Plaintiff's Funds:*

75. After obtaining Plaintiff's funds and financial support, Defendant engaged in a continuing course of concealment and deception regarding the disposition and use of Plaintiff's money. Defendant failed to provide any meaningful accounting or documentation

concerning the investments, reimbursements, or expenditures made using Plaintiff's funds despite repeated requests and formal demands for repayment.

76. Defendant's discovery responses further demonstrate efforts to conceal the true disposition of Plaintiff's funds. Defendant repeatedly claimed that responsive communications, financial records, reimbursement documents, and electronically stored information were no longer in Defendant's possession, custody, or control, or that no such documents existed. Defendant additionally objected to producing communications and financial information concerning Plaintiff's investments, reimbursements, and Company operations while simultaneously asserting that many responsive records could not be located or no longer existed.

77. Defendant further concealed the true financial condition of the Company and the actual use of Plaintiff's money while continuing to solicit additional funds and operational support from Plaintiff. Upon information and belief, Defendant diverted Plaintiff's funds for unauthorized and personal purposes inconsistent with the representations made to Plaintiff at the time the monies were obtained.

### *iii. Plaintiff's Reliance and Resulting Injury*

78. Plaintiff justifiably relied upon Defendant's representations, promises, and omissions in transferring substantial funds, extending credit, and personally financing Company operations. Plaintiff reasonably believed Defendant's representations that he would receive an ownership interest in the Company, reimbursement for expenses, and participation in legitimate business ventures.

79. As a direct and proximate result of Defendant's false pretenses, misrepresentations, and fraudulent conduct, Plaintiff suffered substantial damages, including the loss of investment funds, unreimbursed business expenses, depletion of personal credit, accumulation of debt obligations, loss of promised compensation, and consequential financial harm.

### *iv. Nondischargeability Under § 523(a)(2)(A)*

80. The debt owed by Defendant to Plaintiff arising from the foregoing conduct is exactly the type of debt excepted from discharge by 11 U.S.C. § 523(a)(2)(A).

81. Defendant obtained Plaintiff's property through lies, deception, and fraudulent means, and attempted to obtain releases and other benefits by the same.

82. All "money, property, [or] services" that Defendant acquired from Plaintiff were obtained by "false pretenses, a false representation, or actual fraud" within the meaning of § 523(a)(2)(A).

83. Accordingly, all debts arising from Defendant's fraudulent conduct, including investment losses, unreimbursed expenditures, unauthorized charges, operational expenses, and consequential damages, are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff David Tomlin respectfully requests that the Court enter judgment in his favor and against Defendant Andrew Do and grant the following relief:

1. Determining that the debt owed by Defendant to Plaintiff is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), based on Defendant's false pretenses, false representations, and actual fraud;
2. Determining that the debt owed by Defendant to Plaintiff is nondischargeable pursuant to 11 U.S.C. § 523(a)(4), based on Defendant's larceny and embezzlement, arising from Defendant's intentional and wrongful taking, concealment, and misappropriation of Plaintiff's property;
3. Awarding Plaintiff actual damages, consequential damages, attorneys' fees, costs, and expenses, to the extent permitted by law; and
4. Granting such other and further relief, at law or in equity, as the Court deems just and proper.

Dated: June 9, 2026

Respectfully submitted,

**THE FERGUSON FIRM, LLC**

*/s/ Kenneth D. Ferguson*
Kenneth D. Ferguson
State Bar No. 24124507
Amber Boyd-Cora
State Bar No.24078250
101 E. McKinney St. #88
Denton, Texas 76201
682.428.9220 – Phone and Fax
Kenneth@fergusonfirmtx.com
Amber@fergusonfirmtx.com